470 So.2d 531 (1985)
Lanell Booty RAWLS and Idelia Cooper Booty
v.
Randy A. MORRIS and Malachi Hunt, d/b/a Hunt's Trucking Co., and Hunts Trucking, Inc. and Hanover Insurance Company.
No. 84 CA 0510.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
*532 Michael Paduda, Don Arata, Bogalusa, for plaintiff.
Charles Cassidy, Franklinton, for defendant.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
In this wrongful death and survival action, defendants Randy A. Morris (Morris) and Hanover Insurance Company (Hanover) appeal the judgment of the trial court rendered against them and in favor of plaintiff Lanell Booty Rawls and Idelia Cooper Booty. Plaintiffs have answered the appeal, seeking modification of the judgment.
We affirm.
William F. Booty, the father and husband of plaintiffs, was driving eastward on a state highway when he attempted a left turn onto a parish road. Mr. Booty failed to signal prior to making the turn, and his vehicle was struck mid-turn by an eighteen-wheeler driven by defendant Morris and insured by defendant Hanover. At the point of impact, both vehicles were in the westbound lane; Morris was attempting to pass the slower moving Booty vehicle. The trial court found that at the point of collision, Morris was in violation of a no passing line which controlled his lane of travel. Mr. Booty was injured in the collision and was briefly hospitalized. After his discharge, Mr. Booty's health declined and he ultimately died about seven months after the accident.
Plaintiff originally filed suit against Malachi Hunt, d/b/a Hunt's Trucking Company; Hunt's Trucking, Inc.; Morris, an employee of Hunt's Trucking, Inc.; and Hanover, issuer of a policy of liability insurance covering the vehicle driven by Morris. Only the latter two defendants answered plaintiffs' petition; the other defendants filed a declinatory exception which the record does not show having ever been disposed of. The case went to trial only against defendants Morris and Hanover.
After trial, the district judge found the decedent 40% at fault and Morris 60% at fault in causing the accident. He awarded plaintiffs general and special damages, and allocated the costs to the parties according to the determination of percentages of fault. On appeal, the issues are: (1) whether the trial court erred in determining that Mr. Booty's death was caused by the accident; (2) whether the trial court erred in finding contributory negligence on the part of Mr. Booty; and (3) whether the award of general damages is excessive.
Defendants contend that plaintiffs failed to prove by a preponderance of the evidence that the accident and the resulting injuries were the proximate cause of Mr. Booty's death. They argue that the trial court's ruling to the contrary constitutes manifest error.
Mr. Booty was eighty years old at the time of the accident. The record shows that he was very active for his age and in *533 general good health, with the exception of pre-existing cancer of the prostate. The carcinoma was under control and had not significantly affected Mr. Booty's general health. In the accident, he was briefly knocked unconscious and suffered multiple cuts, bruises and abrasions about the head and upper torso. He remained hospitalized for five days. During the hospitalization, an EKG revealed myocardial ischemia (deficiency of blood supply to the heart muscle, due to destruction or constriction of coronary arteries) and multiple premature ventricular beats (PVCs). Mr. Booty's primary treating physician, Dr. Hortman, prescribed medication which temporarily corrected the PVCs. However, Mr. Booty's heart rapidly weakened. The minor external injuries suffered in the accident healed within three months.
Some two months after the accident, Mr. Booty's carcinoma began to worsen, spreading to surrounding tissue. The carcinoma caused the build-up in the abdominal cavities of fluid which had to be surgically drained three times prior to Mr. Booty's death. It also caused a bladder infection which was surgically corrected. Approximately seven months after the accident, Mr. Booty died. The immediate cause of death was listed on the death certificate as congestive heart failure. The prostate cancer and cirrhosis of the liver were listed as underlying causes.
In support of their case, plaintiffs presented the testimony of the two physicians who treated Mr. Booty immediately prior to his death. Both agreed that congestive heart failure was the primary cause of death. Dr. James A. Roberts, a urologist, treated the prostate cancer. In his opinion, the carcinoma was not a factor in Mr. Booty's death and would not have shortened his life. In the course of his treatment over the year, Mr. Booty had never displayed any symptoms of cardiac problems; although his last EKG before the accident was in 1978, it was normal. Since symptoms of cardiac problems were nonexistent prior to the accident, Dr. Roberts testified that the congestive heart failure most likely began with the accident. He could not absolutely rule out other causes, but in his opinion the accident was the most probable cause of death.
Dr. Richard T. Hortman, a general practitioner, treated Mr. Booty for his accident-related injuries. He discharged Mr. Booty from his care for those injuries almost three months after the accident, but continued to see him. Although he had treated Mr. Booty off and on over the years, he could not recall examining him in the two years immediately preceding the accident. He testified that although Mr. Booty's heart problems could possibly have developed over a period of years, there was no direct evidence of it. He felt it was improbable that Mr. Booty would have had symptoms and not noticed them or complained of them to a physician. Instead, Mr. Booty complained for the first time after the accident of symptoms of weakness, chest pain and skipping of the heartbeat.
He testified that if heart problems did pre-exist, the accident could certainly have irritated the heart and aggravated the problems. He felt that Mr. Booty "very likely" suffered a contusion of the heart in the collision. He did agree that the fluid buildup caused by the cancer contributed to the weakening of the heart and ultimate congestive heart failure. He opined that the accident could have caused Mr. Booty's death.
Defendants put on no medical experts to contradict the testimony of plaintiffs' medical witnesses.
Based on the expert testimony of Drs. Roberts and Hortman, as well as the testimony of the decedent's family and friends that he had displayed no symptoms of heart trouble, prior to the accident, the trial judge concluded that Mr. Booty's heart was weakened by the accident and that the weakening was the primary cause of death.
Plaintiffs' burden is to prove causation by a preponderance of the evidence. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be *534 proven is more probable than not. Lucido v. Aetna Life & Casualty Co., 411 So.2d 608 (La.App. 1st Cir.1982). Causation may, of course, be proven by circumstantial evidence. Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395 (1963). In that instance, a plaintiff's burden of proof is satisfied if the circumstantial evidence excludes other reasonable hypotheses only with a fair amount of certainty so that it is more probable than not that the harm suffered was caused by the tortious conduct of the defendant. Palermo v. Allstate Ins. Co., 415 So.2d 437 (La.App. 1st Cir.1982).
We do not feel that the trial court was manifestly wrong in determining that plaintiffs had met their burden of proof on this issue of causation. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Plaintiffs contend that the trial court erred in apportioning to their decedent 40% of the fault in causing the accident. They argue that the decedent's negligent failure to signal prior to making a left turn was not a cause in fact of the accident.
A defendant who claims contributory negligence as an affirmative defense must prove by a preponderance of the evidence that the injured party failed to act as a reasonable and prudent person and that his negligence was a legal cause of the accident. Tucker v. Lirette, 400 So.2d 647 (La.1981). The threshold inquiry in determining legal cause is whether the act was a substantial factor in causing the accident. Breithaupt v. Sellers, 390 So.2d 870 (La. 1980). For the most part, a determination of contributory negligence is a factual matter lying within the discretion of the trial court, and such determination will not be disturbed on appeal in the absence of manifest error. Marshall v. Biggs, 392 So.2d 111 (La.App. 1st Cir.1980), writ denied 394 So.2d 1244 (La.1980).
Plaintiffs do not contest the trial court's factual finding that their decedent was traveling between 10-15 m.p.h. on a state highway when he attempted a left turn without signaling. The court also found that Morris was approaching the decedent's vehicle at a speed of 45-50 m.p.h. and had observed the slowly moving Booty vehicle at least a quarter of a mile before; the court accepted Morris' testimony that he blew his horn twice immediately prior to beginning his passing maneuver.
LSA-R.S. 32:104 imposes upon all motorists traveling public highways the duty to continuously signal their intention to make a left turn for at least 100 feet before making the turn. However, a motorist who attempts to make a left turn is required not only to signal his intention to do so, but also to ascertain that he can do so in reasonable safety and without endangering overtaking or oncoming traffic. Williams v. United States P. & I. Agency, Inc., 424 So.2d 319 (La.App. 1st Cir.1982); Jones v. Hall, 419 So.2d 523 (La.App. 2d Cir.1982). Had the decedent looked to the rear prior to attempting his left turn, he would have seen Morris' vehicle overtaking his in violation of a no passing zone. His action in commencing his left turn when it was unsafe to do so amounted to contributory negligence, for it was clearly a substantial factor in causing the accident.
Accordingly, we find no manifest error in the trial court's finding of contributory negligence, or in the assessment to plaintiff's decedent of 40% fault. Plaintiff's answer to defendant's appeal raised as error the apportionment to plaintiffs of 40% of costs. Although this specification of error was not briefed, we find no abuse of discretion in the allocation of costs between plaintiffs and defendants.
Finally, defendants contend that the amounts awarded in general damages are excessive. The trial court awarded the wife $60,000 and the daughter $30,000 in general damages; he awarded them both the sum of $15,000 for the decedent's pain and suffering prior to his death. The wife was awarded special damages for medical and funeral expenses. After reduction by 40%, the awards amounted to $42,775 for the wife and $22,500 for the daughter. Defendants argue that the general damages awards are an abuse of discretion, in light *535 of the advanced age of the decedent and his poor physical health.
An abuse of trial court discretion must be clearly demonstrated on the record before an appellate court may tamper with an award of general damages. Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974). We find no such abuse here. The amounts awarded are well within the range of the trial court's discretion. Coco v. Winston Industries, 341 So.2d 332 (La.1976).
For the foregoing reasons, we affirm the trial court judgment in its entirety, and apportion the costs of appeal 40% to plaintiffs and 60% to defendants.
AFFIRMED.