STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-535


MELBA LEE SEE

VERSUS

ENTERGY CORPORATION, ET AL.

**********


APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 06-C-0632-B
HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE

**********


JOHN D. SAUNDERS
JUDGE

**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and John D. Saunders, Judges.

### AFFIRMED IN PART, REVERSED IN PART, AFFIRMED AND AMENDED IN PART


Joseph R. Ballard
Attorney at Law
P. O. Box 2431
Baton Rouge, LA 70821-2431
(225) 381-5887
Counsel for Defendant Appellee:
Entergy Gulf States, Inc.

Matthew Joseph Hill,  Jr.
Attorney at Law
4010 W. Congress, Suite 207
Lafayette, LA 70506
(337) 989-8100
Counsel for Defendant Appellant:
Laura Ann Guilbeau

**Douglas C. Longman, Jr.**
**Longman Russo, APLC**
**P. O. Drawer 3408**
**Lafayette, LA 70502-3408**
**(337) 262-9000**
**Counsel for Defendant Appellant:**
**BellSouth Telecommunications, Inc.**

**Bret Christopher Beyer**
**Attorney at Law**
**P. O. Box 53006**
**Lafayette, LA 70505**
**(337) 232-9733**
**Counsel for Plaintiff Appellee:**
**Melba Lee See**

**SAUNDERS, Judge.**

This case addresses the trial court's granting of a Judgment Notwithstanding the Verdict (JNOV) where it reapportioned fault between defendants, increased damages for the plaintiff, and awarded the plaintiff attorney's fees and costs.

For the following reasons, we affirm in part and reverse in part the trial court's granting of the JNOV.

**FACTS AND PROCEDURAL HISTORY**

This case arises from an October 20, 2005 rear-end automobile accident. Melba See (hereinafter referred to as "See") was southbound on Hwy. 182 in St. Landry Parish when she came upon what she believed to be an electrical wire dangling in her lane of traffic. In an effort to avoid the wire, See slowed and/or stopped several feet short of the impediment. It was at this time that her vehicle was struck from behind by an SUV driven by Laura Ann Guilbeau (hereinafter referred to as "Guilbeau").

Initially, the defendants named in this suit were: Entergy Corporation, Renaissance Media (cable television provider), State Farm, and Guilbeau. Once it was determined that the line hanging over the road was not an electrical wire, but rather a telephone cable, Entergy and Renaissance Media were dismissed from the suit. BellSouth Telecommunications (hereinafter referred to as "BellSouth") was added as a defendant in 2007.

As a result of the accident, See claimed to have suffered extensive head, neck, back, and leg injuries, as well as psychological problems. The back injury was serious enough to require a lumbar surgery and fusion with plates and screws. It is unclear how successful the surgery was, and it is possible that the damage could be permanent. See has also experienced frequent headaches and a temporomandibular

joint (TMJ) disorder.  She claims that these injuries and the strain they put on her daily life have led to depression and an adjustment disorder.  It has been noted that See had a history of back problems before the time of the accident.

A three-day jury trial took place, beginning on August 27, 2008.  Upon conclusion of the trial, the jury found the fault to lie eighty percent (80%) with Guilbeau and twenty percent (20%) with BellSouth.  Damages were awarded as follows:

| | |
|---|---|
| A. physical injury, pain and suffering: | $ 75,000.00 |
| B. mental and emotional pain and suffering: | $ 25,000.00 |
| C. permanent disability: | $ 40,000.00 |
| D. past loss of earnings: | $ 45,000.00 |
| E. future loss of earning capacity: | $ 15,600.00 |
| F. past medical expenses: | $138,000.00 |
| G. future medical expenses: | $   5,000.00 |
| H. loss of enjoyment of life: | $        0.00 |

On September 30, 2008, See moved for a JNOV, or in the alternative, a New Trial, on both the allocation of fault and what See described as the "abusively low damage awards."  The motion was granted by the trial court, altering the allocation of fault to fifty percent (50%) each to Guilbeau and BellSouth.  The trial court also increased damages award to See to the following:

| | |
|---|---|
| A. physical injury, pain and suffering: | $ 150,000.00 |
| B. mental and emotional pain and suffering: | $   50,000.00 |
| C. permanent disability: | $ 100,000.00 |
| F. past medical expenses: | $ 141,767.59 |
| H. loss of enjoyment of life: | $   45,000.00 |

Along with the JNOV, the trial court also conditionally granted See's motion for a New Trial, limited to the issues of liability as between Guilbeau and BellSouth, and damages.  Finally, the trial court apportioned court costs equally between Guilbeau (and State Farm as her insurer) and BellSouth, and awarded See with attorney's fees and costs as a result of BellSouth's failure to make admissions on the

issue of whether BellSouth was the owner of the cable that caused the accident.

Guilbeau and BellSouth have appealed the judgment and asserted the following assignments of error. See answered the appeal and has asserted her desire to have the judgment revised and modified, as indicated below.

**ASSIGNMENTS OF ERROR:**

*BellSouth's Assignments of Error*

1. The trial court erred in granting a JNOV, and, alternatively, a new trial on the issue of liability and reapportioning fault between Guilbeau and BellSouth.

2. The trial court erred in granting a JNOV, and, alternatively, a new trial on the issue of quantum and increasing both general and special damages.

3. The trial court erred in awarding attorney's fees and costs to See under La. Code Civ. P. art. 1472.

4. The trial court erred in apportioning court costs equally between Guilbeau and BellSouth.

*Guilbeau's Assignment of Error*

The trial court in its Judgment on Motion for Judgment Notwithstanding the Verdict and Alternatively for a New Trial erred in finding that defendant, [Guilbeau], was equally negligent with the defendant, [BellSouth].

*See's Request for Revision and Modification*

1. See requests that liability percentages be reassigned as ninety percent (90%) to BellSouth and ten percent (10%) to Guilbeau.

2. See requests that damages be increased in the following categories to the requested amounts:

A. physical injury, pain and suffering:      $250,000.00
B. mental and emotional pain and suffering:      $150,000.00
H. loss of enjoyment of life:      $100,000.00

**LAW AND DISCUSSION ON THE MERITS:**

Here, we are reviewing the trial court's granting of a JNOV and, alternatively, a New Trial, on the issues of reallocation of fault and quantum of damages awarded.

-3-

We will also review the trial court's apportionment of costs and its award of attorney's fees and costs against BellSouth.

The Louisiana Supreme Court, in *Anderson v. New Orleans Public Service, Inc.*, 583 So.2d 829, 832 (La. 1991), stated the following:

> A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. *Scott* [*v. Hospital Service District No. 1*, 496 So.2d 270 (La.1986)]. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

This court has noted in *Domingue v. Excalibar Minerals of La., L.L.C.*, 05-1018, p. 4 (La.App. 3 Cir. 7/26/06), 936 So.2d 282, 286, *writs denied*, 06-2480, 06-2489 (La. 2/2/07), 948 So.2d 1077 and 1078, that:

> The standard of review for a JNOV on appeal is a two-part inquiry: first, the appellate court must determine if the trial court erred in granting the JNOV, which is done by using the same criteria used by the trial judge in deciding whether to grant the motion. Second, after determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review.

## Liability/Apportionment of Fault

We will begin our discussion by looking at the trial court's reapportionment of fault as to Guilbeau and BellSouth. It must first be determined whether the trial court was correct in granting the JNOV. We then must examine whether the facts and inferences point so strongly in favor of the moving party such that no reasonable juror could have reached a different verdict on the issue. Thus, the question becomes

-4-

whether a reasonable juror could have found that the fault in this case should have been apportioned at eighty percent (80%) to Guilbeau and twenty percent (20%) to BellSouth. "The rigorous standard of JNOV is based upon the principle that 'when there is a jury, the jury is the trier of fact.' *Joseph* [*v. Broussard Rice Mill, Inc.*], 00-0628 at p. 5 [(La. 10/30/00)], 772 So.2d [94, 99] (quoting *Scott v. Hospital Serv. Dist. No. 1*, 496 So.2d 270, 273 (La.1986))." *Trunk v. Medical Center of Louisiana*, 04-0181, p. 5 (La. 10/19/04), 885 So.2d 534, 537.

To determine whether the jury's verdict was unreasonable, we will examine the liability of the parties using the same standards applied to juries. The Louisiana Supreme Court, in *Watson v. State Farm Fire and Casualty Ins. Co.*, 469 So.2d 967, 974 (La.1985), issued the standard for allocating fault among multiple parties.

> In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.

Before examining the *Watson* factors, we note a previous decision by this court in *Layssard v. State, Dep't of Public Safety and Corrections*, 07-78, p. 4 (La.App. 3 Cir. 8/08/07), 963 So.2d 1053, 1058, *writ denied*, 07-1821 (La. 11/09/07), 967 So.2d 511, stating that these factors guide the appellate court's determination, but cautioning that "the allocation of fault is not an exact science, nor is it the search for a precise ratio." Instead, we are determining whether the allocated fault falls within a certain range that doesn't violate the manifest error rule.

**Inadvertence/Awareness of the danger**: This first factor from *Watson* essentially addresses whether the conduct that caused the accident was deliberate or

accidental. An analysis of the record with regard to this factor leads us to find that the pendulum fails to swing in either direction. The acts attributed to both Guilbeau and BellSouth fall within the realm of inadvertence. Certainly, Guilbeau did not intentionally run into the back of See's vehicle, putting her own safety at risk as well as that of the appellee. No one makes that claim. We, likewise, fail to find that BellSouth acted with intent in this matter. Although their ownership of the cable that caused the accident is not a question before us, we find no evidence in the record to support that BellSouth knew that the line existed or that it had fallen onto the roadway.

**Gravity of the risk:** We agree with the argument submitted by BellSouth citing *Hager v. State, ex rel. Dep't of Transportation and Development*, 06-1557 (La.App. 1 Cir. 1/16/08), 978 So.2d 454, *writs denied*, 08-347 and 08-385 (La. 4/18/08) 978 So.2d 349. In *Hager*, the court classified the risk associated with DOTD's failure to post the necessary sign indicating a curve on Highway 308 as passive. The driver, who momentarily averted her attention from the road and veered off at the curve, was said to have created an active risk. We find that although the facts are not identical to the current case, the principle is the same. As did the court in *Hager*, we find Guilbeau's momentary lapse in attention while driving was the more significant of the risks created in the current matter.

**Significance of what was sought:** When addressing this factor, courts generally look to the parties' motivations for their given conduct. In the present matter, we find no significance related to either party's motive.

**Extenuating circumstances:** We find that the record reflects no relevant extenuating circumstances that would weigh more favorably for one party over the

other.

**Capacity of the actors:** When addressing the capacities of the parties, we look to their ability to have prevented the accident from occurring. BellSouth contends that it should be vindicated to a degree for not having been aware that it was the owner of the cable and for having no knowledge that the cable was down. We disagree. BellSouth suggests that because it discontinued the use of overhead lines over twenty (20) years ago, it is somehow not responsible for the lines that were left standing despite their nonuse. We disagree. BellSouth had the capacity, had it adequately kept track of its lines, to prevent the accident by properly maintaining its cables.

All that being considered, we are guided by certain principles with regard to accidents caused by the carelessness of other drivers.

For example, a higher percentage of fault may be attributed the driver with "the superior (and sole) opportunity at the time of the accident, or the 'last clear chance,' to control the movement and speed of her vehicle." *See Hager*, 978 So.2d at 470. Further, "[d]rivers of automobiles are under a never ceasing duty to maintain a proper lookout and to see what should be seen." *Davis v. Smith*, 35,117, p. 6 (La.App. 2 Cir. 10/02/01), 796 So.2d 765, 769, *writ denied*, 07-2887 (La. 1/25/02), 807 So.2d 250.

"The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." La.R.S. 32:81(A). "A motorist's duty of reasonable care includes the duty to keep his vehicle under control." *Sinitiere v. Lavergne*, 391 So.2d 821, 826 (La.1980)(citations omitted).

"Further, a motorist has a duty to maintain a proper lookout for hazards which by the use of ordinary care and observation he should be able to see in time to avoid

running into them." *Id.*

"In order to avoid liability, a following motorist who rear-ends another vehicle must prove a lack of fault; he may do so by establishing that he had his vehicle under control, closely observed the lead vehicle and followed at a safe distance under the circumstances." *Taylor v. Voigtlander*, 36,670, p. 4 (La.App. 2 Cir. 12/11/02), 833 So.2d 1204, 1206.

Our review of the jurisprudence makes it clear that Louisiana law places an unyielding duty on drivers to maintain proper care and to be ever-vigilant and in control of their vehicles. Guilbeau had been following See for more than a mile at the time of the accident. The accident occurred during daylight hours, and the sky was clear. The record reflects that no skid marks were left at the scene, suggesting that See did not come to a screeching halt just before reaching the cable. It is clear to this court that more careful driving on the part of Guilbeau would have prevented the accident from taking place. The heavy duty placed by Louisiana law on following motorists clearly supports the jury's finding and renders a JNOV inappropriate in this case.

Having taken the previously discussed factors into account, we find that the heavy duty placed on See has not been satisfied. It is for these reasons that we find that the trial court should not have granted the JNOV on the issue of reapportioning fault between Guilbeau and BellSouth. Accordingly, we reverse the trial court's adjustment of fault at fifty percent (50%) for each party and reinstate the jury's verdict assigning fault at eighty percent (80%) to Guilbeau and twenty percent (20%) to BellSouth.

Damages

-8-

BellSouth contends that the trial court erred in granting the JNOV, and alternatively a New Trial, on the issue of quantum regarding: physical injury, pain and suffering; mental and emotional pain and suffering; permanent disability; past medical expenses; and, loss of enjoyment of life. We find no merit in this contention. We likewise find no merit in See's argument that the damages awarded should be further increased for the categories of physical injury, pain and suffering, and mental and emotional pain and suffering. On the issue of loss of enjoyment of life, however, we find that damages should be increased.

> The appellate court, in determining whether the trial court erred in granting the JNOV as to quantum, once again uses the criteria set forth in *Scott*, [496 So.2d 270], i.e., could reasonable men in the exercise of impartial judgment differ as to the fact that the jury award was either abusively high or abusively low. If the answer is in the affirmative, then the trial court erred in granting the JNOV, and the jury's damage award should be reinstated. On the other hand, if the answer is in the negative, then the trial court properly granted the JNOV, and its damage award based on its independent assessment of the damages is the judgment of the trial court which is reviewed on appeal under the constraints of *Coco* [*v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976)].

*Anderson*, 583 So.2d at 834.

As with our discussion on liability, we will first address whether the trial court was correct in granting the JNOV, and alternatively a New Trial, on each item of damages. If the trial court's determination in granting the motion was proper, i.e., reasonable men in the exercise of impartial judgment could not have differed as to the fact that the jury award was abusively low, we will then review the amount set by the trial court under each item. In order for this court to disturb a quantum award made by the trial court, the record must show that the trial court abused its "much discretion." *Coco*, 341 So.2d at 335.

**Physical injury, pain and suffering; and, permanent disability:** The initial

figure awarded by the jury for physical injury, pain and suffering was $75,000.00. Permanent disability was at $40,000.00. We will address these categories together. In examining the record, it is clear that the collision was a serious one. Although the airbags on both vehicles failed to deploy, the impact was severe enough to break the seat back in See's car and warrant a 911 call. As a result of the accident, See suffered an injury to her L5-S1 disk, impinging on the nerve roots to her spine and legs. This injury resulted in a foot drop requiring See to walk with a cane. See's doctors suggest that there will be permanent pain in her legs. They have also found that her subjective symptoms correlated with the objective data from EMG/NCV tests.

See also suffered from severe headaches from the time immediately following the accident all the way up to trial. These headaches were severe enough for See's personal doctor, Dr. Polanco, to refer her to a neurologist, Dr. Snatic. Dr. Snatic was not able to find a medication that could adequately control the headaches until 2008, approximately three (3) years after the accident. See testified that she is now only suffering from one (1) or two (2) bad headaches a month.

Moreover, See developed a bilateral TMJ disorder diagnosed by Dr. Pearce, a dentist, who limits his practice to treating and diagnosing TMJ disorders. Based on her condition and the time period in which the disorder developed, Dr. Pearce felt that the injury came as a result of the accident. To treat the injury, Dr. Pearce referred See to Dr. Briggs, who pulled some of See's teeth and fitted her with a splint designed to alleviate the jaw and facial pain. See was instructed to wear the splint for six (6) to nine (9) months at all times, and it was suggested that she may have to sleep with the device permanently.

In effort to controvert the injuries suffered by See, BellSouth argued that See

-10-

suffered a previous back injury years earlier while employed with Wal-Mart. BellSouth argues that the current medical hardships are nothing more than flare ups of an old injury. We are not convinced. The prior injury to See was characterized as a muscle strain. There is no evidence in the record lending any credence to the assertion that the former injury was any more serious than originally believed. In fact, the record reflects that See had experienced no ill effects from muscle strain since 2002 when she visited a chiropractor. BellSouth further argues that the TMJ disorder was caused not by the accident, but rather by poor dental hygiene on the part of See. There is some merit to this argument. BellSouth points to Dr. Pearce's testimony, in which he states that such a condition could result from poor hygiene, such as was the case with See. However, when asked his opinion on what ultimately caused the condition, Dr. Pearce concluded that it stemmed from the accident. We find this to be significant.

After reviewing the record, and for the above reasons, we find that the jury's award of $75,000.00 was abusively low and that no reasonable jury, exercising impartial judgment, could have come to a different conclusion. Our finding is the same for the $40,000.00 award for permanent disability. As such, we find that the trial court was correct in granting the JNOV on the issue of quantum related to physical injury, pain and suffering and permanent disability. We further find that there was no clear abuse of discretion on the part of the trial court in increasing the awards in those categories to $150,000.00 and $100,000.00, respectively. These awards are adequate, and we thus reject See's request that the physical injury, pain and suffering award be further increased to $250,000.00.

**Mental and emotional pain and suffering:** As was the case with the award

for See's physical injuries, we find that the trial court acted properly in granting the JNOV related to See's mental and emotional suffering.

Dr. Snatic diagnosed See with depression shortly after the time of the accident and put her on anti-depressants, which she remained on until the time of trial and will likely continue to take indefinitely. He eventually referred See to Dr. Blackburn for further psychiatric evaluation and treatment. Dr. Blackburn ruled out the possibility of a bipolar disorder and gave the following testimony as to the accident's impact on See's mental and emotional health.

Q     And is it the fact that she now has significant limitations on her physical activity, something she's having a hard time—a real hard time accepting and coping with?

A     It's difficult for her to accept it. It frustrates her. She frequently pushes that level of activity and then pays the price for it as either go to bed, take more medicine, or have these mood swings. She hasn't accepted it. The other problem is the physical pain, disability, and that it's been frightening for her because she's had some upsetting messages from her treating doctors—things like permanent nerve damage, things like the weakness in your legs is not going to get better, it might get worse. She has envisioned the worst case scenario and sees herself as maybe ending up in a wheelchair at some point in her life, and not too far down the line. We've been trying to help her get rid of those images, but that still has a ways to go.

Dr. Blackburn attributes all of See's mental and emotional problems as being a result of the accident. For this reason, and those stated in the preceding paragraphs, we hold that the trial court properly found that the award of $25,000.00 was abusively low. Thus, we find that the granting of the JNOV was proper. Further, we find no clear abuse of discretion on the part of the trial court in raising the award to $50,000.00. However, we reject See's argument to further raise the award to $150,000.00.

**Past medical expenses:** Unlike the more subjective general damages of mental

and emotional pain and suffering, past medical expenses presents the court with a concrete set of numbers to work through. The original allotment of damages for medical expenses, issued by the jury, totaled $138,000.00. There is no dispute that, at a minimum, this amount is owed to See for her medical expenses. The trial court raised that amount to $141,767.59. BellSouth argues that the $3,767.59 difference between the two totals is not attributable to the accident. This sum was charged by Dr. Pearce for the dental work performed in anticipation of treating See's TMJ disorder. Without this preparatory work the TMJ treatment could not have been performed.

We have already discussed See's TMJ disorder and how it relates to the accident at issue. Whether or not this dental work, in preparation of the treatment, was necessitated by the accident is irrelevant. As See correctly notes in her brief, this court addressed this exact issue in *Hall v. State Farm Mutual Auto. Ins. Co.*, 94-867 (La.App. 3 Cir. 5/31/95), 658 So.2d 204. There, the plaintiff needed TMJ treatment. Before treatment could begin however, the plaintiff needed bridge to replace six (6) teeth that were missing *prior to the accident* that caused the TMJ. The cost of the bridge was included in the plaintiff's medical expenses even though her missing teeth were not accident related. In *Hall* we noted that "[r]egardless of the fact that six of Ms. Hall's teeth were missing prior to the accident, she did not suffer from TMJ disorder until after the accident." *Hall*, 658 So.2d at 207. Similarly, this poor condition of See's teeth prior to the accident does not preclude her from receiving treatment for a condition caused by the accident.

For these reasons, we find that the trial court was correct in granting the JNOV on the issue of See's past medical expenses. We also find that the increase in the award to $141,767.59 was appropriate. There was no abuse of discretion on the part

of the trial court.

**Loss of enjoyment of life:** Oddly, the jury awarded no damages for See's loss of enjoyment of life. Yet, the record is filled with testimony indicating that prior to the accident See was a generally happy person, who enjoyed her job and who had a pleasant personal life. "Loss of enjoyment of life, sometimes known as hedonic damages, refers to the detrimental alterations of a person's life or lifestyle or a person's inability to participate in the activities or pleasures of life that were formerly enjoyed." *McGee v. A C and S, Inc.*, 05-1036, p. 3 (La. 7/10/06), 933 So.2d 770, 773.

The following testimony from the psychiatric assessment conducted by See's treating psychiatrist at the time of the trial, Dr. Blackburn, gives some indication of how See's life has been changed by the accident:

> [Emotional] lability with crying spells, episodes of irritability and anger, a general loss of energy and enthusiasm for life, fear of future disability, a decreased sex drive, feelings of hopelessness and helplessness, and problems with memory and concentration....[P]rior to the accident, she was considered to be an outgoing, positive person who enjoyed being with people, laughing, teasing and interacting positively. She was able to work regularly, gardened, enjoyed multiple recreational activities including socializing, fishing, camping, 4-wheeling, and gardening. Since the accident, she stated that "my whole life has changed," she is discouraged, frustrated and depressed.

We find that no reasonable jury, exercising impartial judgment, could have come to the conclusion that no damages for loss of enjoyment of life were warranted. Accordingly, we find that the trial court was proper in granting the JNOV on this issue. The award of $45,000.00 set by the trial court on JNOV is, in our view, similarly too low–such that it is enough to qualify as an abuse of discretion. Whether or not a trial court has abused its discretion is ultimately a judgment call on the part of the appellate court. *Coco*, 341 So.2d 332. Although awards granted in prior, similar cases are, alone, not enough to justify a finding of abuse of discretion, they

-14-

may serve as a tool in gauging the propriety of an award. *Id*.

The strong likelihood of severe permanent damage coupled with the emotional and psychological toll that the accident has taken on See makes her case particularly compelling on the issue of loss of enjoyment of life. The testimony from Dr. Blackburn serves to reinforce what is plain to see. We are guided in our decision by another case recently before this court, *Goutro v. Sullivan*, 07-1430 (La.App. 3 Cir. 5/07/08), 986 So.2d 673, *writ denied*, 08-2139 (La. 11/10/08), 996 So.2d 1077. In *Goutro*, a college student, on her way to class, was involved in a one car accident caused by poor road conditions on Highway 190. The accident left her with chronic pain in her back and knees. On appeal, a panel of this court found that the lowest reasonable amount that could be awarded for her loss of enjoyment of life was $50,000.00. The record in the matter before us paints a much dimmer picture for See's future than the record before the court in *Goutro*. We find that $45,000.00 is still an abusively low figure, and that the trial court exercised an abuse of its discretion in making the award. Accordingly, we increase that the damages for loss of enjoyment of life to $100,000.00–the lowest justifiable amount for that element of damages, based upon the testimony and facts contained in the record.

Attorney's Fees

Louisiana Code of Civil Procedure Article 1466 addresses requests for admissions:

A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Articles 1422 through 1425 set forth in the request or of the truth of any relevant matters of fact, including the genuineness of any documents described in the request. Copies of documents shall be served with the request unless they have been or are otherwise furnished or made available for inspection and copying. The request may, without leave of court, be served upon the plaintiff after

commencement of the action and upon any other party with or after service of the petition upon that party.

Louisiana Code of Civil Procedure Article 1472 addresses the penalties imposed when a party refuses to admit the genuineness of the truth of any matter requested under Article 1466.

If a party fails to admit the genuineness of any document or the truth of any matter as requested under Article 1466, and if the party requesting the admission thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that the request was held objectionable pursuant to Article 1467, or the admission sought was of no substantial importance, or the party failing to admit had reasonable ground to believe that he might prevail on the matter, or there was other good reason for the failure to admit.

In the case before us, BellSouth contends that the trial court erred in its granting of attorney's fees of $2,000 and costs of $4,324.96 against BellSouth for violations of the above articles. We disagree. When the truth of the issue in question is proven at trial, as was the case here–evidenced by the jury's verdict and the trial judge's judgment–the non-moving party must show that there was a reasonable ground to believe that it might prevail on the issue. We note that "[t]he trial court has broad discretion in regulating pretrial discovery, and its discretion should be honored absent evidence of abuse." *Brodtmann v. Duke*, 98-1518, p. 6 (La.App. 4 Cir. 3/21/01), 803 So.2d 41, 44, *writs denied*, 01-3184 (La. 12/05/01), 802 So.2d 637, and 02-334 (La. 4/12/02), 813 So.2d 409 (citations omitted).

The purpose of sanctions against parties who unjustifiably resist discovery is to make the discovery articles effective. C.C.P. art. 1496 [now La. C.C.P. art. 1466] was designed to require the admission of facts which ought not to be disputed at trial, so as to eliminate the time, trouble and expenses of proving uncontroverted facts.

*Boseman v. Orleans Parish School Board*, 98-1415, p. 8 (La.App. 4 Cir.

1/06/99), 727 So.2d 1194, 1198, *writ denied*, 99-0390 (La. 4/01/99), 742 So.2d 554.

In the instant case, once it became apparent to See that the wire hanging in the road was a telephone cable, BellSouth was added to the suit. BellSouth was allowed to inspect the wire on May 11, 2007 and denied that it was the owner. Soon thereafter, See sent Requests for Admissions to BellSouth asking that it formally acknowledge that the wire was, in fact, BellSouth's telephone line. The request was refused. BellSouth was ultimately found, initially by the jury and then later by the trial judge, to be partially at fault for the accident that caused See's injuries.

BellSouth contends that it was justified in denying the admissions because of its lack of records indicating that it had a cable line at that location, and because the site, where the accident took place, had been altered by the time BellSouth was added to the suit. We find, however, that the opportunity to inspect the cable on May 11, 2007, along with the knowledge that BellSouth was the only telephone company to ever provide service in the area, are enough to demonstrate that there was no legitimate justification for denying the admission. Recognizing the great deference owed to the trial court's determination on the issue, we find that the trial court was correct in granting the motion for attorney's fees and costs.

Court Costs

BellSouth asserts that the trial court erred in apportioning costs at an equal 50/50 share between Guilbeau and BellSouth. It contends that the initial jury verdict assigning liability at eighty percent (80%) to Guilbeau and twenty percent (20%) to BellSouth was proper, and that costs should be divided similarly. We disagree and are hesitant to disturb the trial court's decision on how costs should be assigned.

Louisiana Code of Civil Procedure Article 1920 provides: "Except as otherwise

provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." The Louisiana Supreme Court has held, in *Cajun Electric Power Co-op v. Owens-Corning Fiberglass Corp.*, 616 So.2d 645 (La.1993), that a trial court's assignment of costs, pursuant to Article 1920, is entitled to great discretion. Absent a showing of abuse of discretion on the part of the trial court, we will not disturb the trial court's fair judgment. Although the trial court *may* assign costs at the percentages of liability assigned to the parties, it is not mandated to do so. *See Rawls v. Morris*, 470 So.2d 531 (La.App. 1 Cir. 1985). We find that there was no clear abuse of discretion on the part of the trial court, and, accordingly, we find that costs were properly assigned in equal portions against Guilbeau and BellSouth.

**CONCLUSION:**

For reasons already given, we find that the trial court erred in granting the JNOV, and alternatively a New Trial, on the issue of reapportioning fault as between Guilbeau and BellSouth. Thus, we reverse the court's ruling apportioning fault equally, and we reinstate the jury's verdict on liability at eighty percent (80%) to Guilbeau and twenty percent (20%) to BellSouth. We affirm the trial court's granting of the JNOV to increase damages for: physical injury, pain and suffering; mental and emotional pain and suffering; permanent disability; past medical expenses; and, loss of enjoyment of life. We also find that the increased damages assigned by the trial court were adequate and proper on all issues other than loss of enjoyment of life. On that issue, we find that damages should be raised to $100,000.00. Further, we affirm the trial court's award of attorney's fees and costs against BellSouth for violation of La.Code Civ.P. art. 1472. Lastly, giving great deference to the trial court's

determination on the issue, we affirm the decision apportioning court costs equally between Guilbeau and BellSouth.

**AFFIRMED IN PART, REVERSED IN PART, AFFIRMED AND AMENDED IN PART.**