GUIDRY, Judge.
Emilda Davis was allegedly injured on November 23, 1984, when a shopping cart overturned on her right foot while shopping at a Winn-Dixie store in Lafayette, Louisiana. She brought this damage suit against defendant, Winn-Dixie Louisiana, Inc. (hereafter Winn-Dixie). Defendant filed a third party demand against Unarco *151 Commercial Products, Inc., the manufacturer of the shopping cart.[1]
After trial on the merits, a jury found defendant was 10% at fault in causing plaintiffs injuries and found plaintiff 90% at fault. The jury awarded plaintiff the sum of $6,000.00 in damages. Pursuant to this verdict, the trial court rendered judgment in favor of plaintiff, Emilda Davis, against defendant, Winn-Dixie, in the amount of $600.00. Subsequently, plaintiff filed motions for judgment notwithstanding the verdict, additur and new trial which were denied. Plaintiff appealed. Defendant answered the appeal urging that the court affirm the verdict of the trial court. Alternatively, appellee seeks a reduction in the damage award and in the assessment of fault to Winn-Dixie.
FACTS
The accident occurred on November 23, 1984, as plaintiff, a 47 year old female, was preparing to enter a Winn-Dixie store located on Simcoe Street in Lafayette, Louisiana. Plaintiff was accompanied by her sister, Ruby St. Julien. As the two women approached the front of the store, Ms. St. Julien checked the prices on several plants nearby, and the plaintiff selected a shopping cart from the “buggy corral”. The plaintiff pulled the shopping cart sidewards, toppling it onto her right foot. During the short time interval between plaintiff’s arrival at the store and the accident, Joseph Dugas watched plaintiff and her sister from his vantage point in the manager’s office of the store. He stated that he watched as the plaintiff pulled on the shopping cart in a direction perpendicular to the direction in which the wheels of the cart were designed to roll, causing the cart to topple over onto her foot.
At the same time, Frank David Cannino, Jr., a store employee, was “punching out” at the timeclock which was mounted on the wall of the manager’s office. He heard the noise caused by the falling shopping cart and went outside to investigate. Cannino saw the plaintiff sitting on the sidewalk next to the overturned shopping cart. He inquired as to the plaintiff’s condition and observed that she was in pain. Seconds later, Dugas, the store manager, arrived and took control of the situation, assisting the plaintiff and ordering another store employee to drive the plaintiff to a nearby hospital.
Cannino stated that the shopping cart was lying on its side on the sidewalk. He righted the shopping cart, pushed it around and examined it to see if it was broken or damaged. He found the cart to be stable when rolled. Cannino looked to see if any of the wheels were out of line, or if there was any broken metal or broken welds. He looked at all four wheels on the shopping cart, and found that they appeared to be in good working condition. He testified that when he rolled the buggy around, the cart operated properly. Following his inspection, he replaced the shopping cart in the “buggy corral”.
Shortly after the accident, an employee of Winn-Dixie transported the plaintiff to a local hospital, where she was treated in the emergency room and released. Later, an infection developed in the foot, which required plaintiff’s hospitalization. The plaintiff was treated by several physicians, including Drs. Darrell Henderson and James Trahan, who both testified on plaintiff’s behalf at trial.
On appeal plaintiff urges trial court error as follows:
1. The trial court erred when it determined that plaintiff was 90% at fault.
2. The trial court erred when it awarded plaintiff only $6,000.00 in damages.
FAULT
Plaintiff urges that the trial court erred in assessing her with 90% accident fault. We disagree.
With reference to the determination of comparative fault, our brethren of the Fourth Circuit, in Gordon v. Commercial *152 Union Ins. Co., 503 So.2d 190 (La.App. 4th Cir.1987), writ denied, 506 So.2d 1227 (La.1987), at pages 192-193, stated:
“In cases involving issues of comparative fault, the trier of fact is required to make an allocation of percentage of fault to the responsible parties. In determining the percentage of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985).
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacity of the actor, whether superior or inferior, and (5) any extenuating circumstance which might require the actor to proceed in haste, without proper thought. Watson, supra.
It is well settled that the allocation of comparative negligence is a factual matter lying within the discretion of the trial court, and such determination will not be disturbed on appeal in the absence of manifest error. Rawls v. Morris, 470 So.2d 531 (La.App. 1st Cir.1985). When there is evidence before the trier of fact which, upon its evaluation of credibility furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. In other words, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Canter v. Koehring, 283 So.2d 716 (La.1973). Further, in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), the Supreme Court amplified and further delineated the standard thusly:
‘Manifestly erroneous in its simplest terms, means ‘clearly wrong’. We said, then, that the appellate court should not disturb such a finding of fact unless it is clearly wrong.’ ”
There was conflicting testimony regarding plaintiff’s actions at the time of the accident. Plaintiff testified that when she removed the shopping cart from the “buggy corral”, she began to push it into the store when suddenly it toppled over striking her right foot. On the other hand, Joseph Dugas, the store manager, testified that he was in the manager’s office at the time of the accident, and had a clear view of the accident scene. He recognized plaintiff as she walked toward the store, since he had met her in the store on previous occasions. As the plaintiff approached the buggy corral, she selected a shopping cart from the front of the corral. Plaintiff backed the cart out of the corral with her right hand situated on the left side of the buggy handle. She turned around and looked at Dugas. At that point, plaintiff’s body was situated on the right side of the cart. She backed the cart up and waved to Dugas with her left hand and pulled the cart sideways with her right hand (in a direction perpendicular to the direction in which the wheels of the cart are designed to roll), toppling it over onto her right foot.
Additionally, there was conflicting testimony regarding the condition of the cart. Plaintiff described the cart as having a worn right rear wheel which was “ate up” or “messed up”. She testified at trial that the right rear wheel was thinner than the other wheels on the cart and was crooked. In her deposition, taken prior to trial, plaintiff stated that she did not see anything broken on the cart nor anything wrong with the right rear wheel. Plaintiff testified at trial that after Cannino picked up the cart, it fell twice as he was pushing it around. Ruby St. Julien testified that the right rear wheel of the cart was “all crooked like” and “was all eat up like”. This testimony was refuted by Dugas and Cannino’s testimony. Cannino unequivocally stated that after he picked the cart *153 up, he inspected it and then rolled it around without any difficulty. He then returned it to the buggy corral for use by other customers. Both Dugas and Cannino testified that after the accident, the cart was inspected and found to be in good, serviceable condition. Cannino also stated that, while the wheels of the cart were not brand new, they were not worn.
In apportioning fault, the jury apparently accepted the testimony of Dugas and Can-nino over that of plaintiff and her sister, Ruby St. Julien. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact made by the trial court should not be disturbed on appellate review. We find the jury’s determination of credibility, its evaluation of the evidence, and, based thereon, its apportionment of fault, reasonable and clearly supported by the record. Our conclusion in this regard makes our consideration of appellee’s alternative contention concerning the jury’s assessment of fault unnecessary.
DAMAGES
The jury, without itemization, awarded plaintiff $6,000.00 in damages. At trial, plaintiff introduced in evidence, partly by stipulation but, in any event, without objection from opposing counsel, $5,022.80 in medical expenses incurred as a result of the accident. On appeal, appellee urges that plaintiff failed to establish that these medical expenses were for necessary medical treatment resulting from the accident. The record establishes otherwise. Since the record confirms that plaintiff incurred special damages in the amount of $5,022.80 as a result of the accident, the jury’s general damage award amounts only to $977.20. Appellant contends that this court should increase the latter award because it is lower than the lowest amount awardable based upon a reasonable evaluation of the record evidence.
The record reflects that, as a result of the accident, plaintiff suffered a laceration of the right foot which required immediate medical attention. Subsequent to being treated and released from the emergency room of a local hospital, the foot became infected. Plaintiff’s physician, Dr. James Trahan, an internist, recommended hospitalization. After a week’s stay in the hospital, the infection cleared and the wound eventually healed. However, plaintiff continued to complain of pain in her right foot. X-rays revealed no abnormalities or skeletal injuries. Dr. Trahan concluded that plaintiff was suffering from cutaneous neuralgia which is pain associated with a nerve injury. He opined that surgical intervention might become necessary if plaintiff’s pain persisted.
Because of her continued complaints of pain, Dr. Trahan referred plaintiff to Dr. Darrell Henderson, a plastic surgeon. A thermogram performed by Dr. Henderson was essentially normal. Dr. Henderson opined that surgical intervention was not necessary and that the pain plaintiff was experiencing would disappear within a year to a year and a half or, in any event, it would be that long before she reached maximum improvement. Dr. Henderson testified that, in all probability, plaintiff’s complaints of pain were not based on the physical injury to the foot but might be imaginary or psychological in origin.
Considering the above, in our view, the damage award made by the jury is too low and must be increased. Plaintiff was hospitalized for one week and has suffered and will suffer some lingering pain in her foot, with maximum improvement not expected for approximately eighteen months post-accident. We consider a general damage award in the amount of $5,000.00 to be the lowest amount awardable under the circumstances. Accordingly, we amend the judgment of the trial court to increase the award to plaintiff to 10% of $10,022.80 or the net sum of of $1,002.28. In all other respects, the judgment of the trial court is affirmed. We cast defendant, Winn-Dixie, with all costs of this appeal.
AFFIRMED AS AMENDED.

. Winn-Dixie subsequently filed a motion to dismiss, without prejudice, its claim against Un-arco which was granted.