# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## CA 07-78

**CHARLES LAYSSARD**

**VERSUS**

**STATE OF LA., DEPT. OF PUBLIC SAFETY AND CORRECTIONS**

**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 55,111
HONORABLE CHARLES BLAYLOCK ADAMS, DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.

**AFFIRMED IN PART, REVERSED IN PART.**

**Otis Edwin Dunahoe, Jr.**
**Dunahoe Law Firm**
**P. O. Box 607**
**Natchitoches, LA 71458-0607**
**(318) 352-1999**
**Counsel for Plaintiff/Appellee:**
**Charles Layssard**

**Victoria R. Murry**
**Louisiana Department of Justice**
**P. O. Box 1710**
**Alexandria, La 71309**
**(318) 487-5944**
**Counsel for Defendant/Appellant:**
**State of Louisiana, Dept. of Public Safety and Corrections**

**SAUNDERS, Judge.**

This is a case involving an automobile accident. A Department of Public Safety and Corrections Officer, who was within his course and scope of employment, collided with a left turning vehicle driven by Plaintiff. Plaintiff had slowed down and was beginning a left turning maneuver. Plaintiff filed suit against the officer, and his employer, the State of Louisiana through the Louisiana Department of Public Safety and Corrections (hereinafter "Defendants"). After a jury trial on the matter, the jury allocated 100% of the fault to the Defendants and awarded Plaintiff $222,192.00 in damages. Defendants now appeal said judgment.

We affirm in part, and reverse in part.

**FACTS AND PROCEDURAL HISTORY**

The instant litigation arises out of an automobile accident that occurred on June 18, 2001, in Rapides Parish on Highway 8, approximately 600 feet east of its intersection with Highway 119. Plaintiff, Charles Layssard, was driving a two-ton pick-up truck and was towing a thirty-foot trailer loaded with a backhoe. Plaintiff was being followed by an escort vehicle. Plaintiff was attempting to make a left turn from the right eastbound lane of travel, across the westbound lane of travel, into a private drive located across the westbound lane. While Plaintiff was attempting to make this left turn, defendant driver, Department of Public Safety and Corrections Officer Harold Stanley Cook, came over a hill behind Plaintiff and attempted to pass the escort vehicle and Plaintiff's vehicle. Defendant driver collided with Plaintiff's pick-up truck.

Plaintiff filed suit against Officer Harold S. Cook, and his employer, the State of Louisiana, through the Louisiana Department of Public Safety and Corrections (hereinafter "DPSC"), on June 3, 2002. In his petition, Plaintiff alleged that as a

result of Officer Cook's negligence in causing the accident, he incurred injuries to his right wrist, left ring finger, and left hip, which eventually led to the need for total a hip replacement, which was performed in June 2003.

The matter came to a jury trial on September 25, 2006. Upon the close of evidence, the jury deliberated and rendered a verdict in favor of Plaintiff and against Defendants, in solido, for the sum of $222,192.00. The jury found that Officer Cook's actions constituted negligence, and that his negligence was the sole cause of the accident. The jury further found that Plaintiff suffered damages as a result of the collision and awarded him $87,000.00 for physical pain and suffering (past and future), $37,000.00 for mental pain and suffering (past and future), $37,000.00 for disfigurement and disability and loss of enjoyment of life, $53,768.00 for past medical expenses, $5,000.00 for future medical expenses, and $2,424.00 for property damage. A judgment pursuant to the jury verdict was signed on October 11, 2006. Defendants timely filed a motion and order for a suspensive appeal from said judgment on November 13, 2006. Plaintiff subsequently filed an answer to Defendants' appeal, on February 2, 2007, seeking an increase in the amount of general damages awarded by the jury, alleging that the damages awarded were inadequate.

**ASSIGNMENTS OF ERROR:**

1. Was the jury in error in finding DPSC Officer Harold S. Cook 100% at fault in causing the accident at issue?

2. Was the jury manifestly erroneous in awarding damages to Plaintiff for a total left hip replacement?

3. Was the jury manifestly erroneous in awarding future medical treatment to Plaintiff?

**ASSIGNMENT OF ERROR #1:**

2

Defendants argue that the jury erred in finding that Officer Cook was 100% at fault in causing the accident. We disagree.

The Louisiana Supreme Court, in *Duncan v. Kansas City Southern Railway Co.*, 00-66, p. 10-11 (La.10/30/00), 773 So.2d 670, 680-81, set forth the standard for reviewing comparative fault determinations as follows:

> This Court has previously addressed the allocation of fault and the standard of review to be applied by appellate courts reviewing such determinations. Finding the same considerations applicable to the fault allocation process as are applied in quantum assessments, we concluded "the trier of fact is owed some deference in allocating fault" since the finding of percentages of fault is also a factual determination. *Clement v. Frey*, 95-1119 (La.1/16/96), 666 So.2d 607, 609, 610. As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. *Id.*

Therefore, a trier of fact's allocation of fault is subject to the manifestly erroneous or clearly wrong standard of review. A trial judge's findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't of Transp. & Dev.,* 617 So.2d 880 (La.1993). "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1111 (La.1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1112.

The Louisiana Supreme Court addressed what factors to consider when attempting to review an allocation of fault in *Watson v. State Farm and Cas. Ins. Co.*, 469 So.2d 967, 974 (La.1985):

> [V]arious factors may influence the degree of fault assigned, including:

3

(1)[W]hether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

*Id* at 974.

These factors also guide an appellate court's determination as to the highest or lowest percentage of fault that could reasonably be assessed to each party. *Clement*, 666 So.2d at 611. Thus, the *Clement* court directs that the allocation of fault is not an exact science, nor is it the search for a precise ratio. Rather, much like that of quantum assessment, allocation of fault is the finding of an acceptable range and any allocation by the trier of fact within that range cannot violate the manifest error standard of review. When we look to the applicable laws and standard of review, this court is to make a determination of whether any reasonable person could have made the allocation of fault that the jury made under the facts of this case.

Louisiana Revised Statutes 32:104 states:

> A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.

> B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

> C. No person shall stop or suddenly decrease the speed of

4

a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.

D. The signals provided for in R.S. 32:105(B) shall be used to indicate an intention to turn, change lanes or start from a parked position and shall not be flashed on one side only on a parked car or disabled vehicle, or flashed as a courtesy or "do pass" signal to operators of other vehicles approaching from the rear.

Defendants general argument in this assignment is that pursuant to La.R.S. 32:104 and *Thomas v. Champion Insurance Co.*, 603 So.2d 765 (La.App. 3 Cir. 1992), because Plaintiff was in the process of making a left hand turn at the time of the accident at issue, he is presumed negligent. Defendants argue that Plaintiff did not overcome this presumption of liability and prove that he was free from negligence.

Defendants first assert that Plaintiff should be found to have had some fault as he did not fulfill his duty to look to the rear and check for overtaking vehicles. We do not agree.

This court clarified the application of La.R.S. 32:104, in *Thomas*, when it stated, "[a] left-turn is generally a dangerous maneuver *which must not be undertaken until the turning motorist ascertains that the turn can be made in safety* (Citations omitted.) A left-turning motorist involved in an accident is burdened with a presumption of liability and the motorist must show that he is free from negligence. (Emphasis added.) *Id*. at 767.

In the case before us, Plaintiff testified that he checked the rear of his vehicle and the road twice before he began making his turn. When discussing what he saw the first time he checked the rear of the vehicle, Plaintiff testified, "I checked the

5

mirrors, it was clear, the road was clear." When testifying as to what he saw the second time he checked his mirrors, Plaintiff testified, "...when I was starting to make a wide turn to make my turn, I checked my mirrors again, everything was clear." A reasonable jury could choose to believe Plaintiff's testimony and find that Plaintiff had fulfilled his duty to ascertain that the left turn could be made in safety.

Moreover, Sargent Fred Stevens, an accident reconstruction expert, testified that Officer Cook was traveling at a speed of 60.7 miles per hour when he applied his brakes and collided with Plaintiff. This testimony, coupled with Officer Cook's testimony that he had slowed down 10-15 miles per hour prior to applying his brakes, leads a reasonable person to find that Officer Cook was traveling at, or near, 75 miles per hour prior to the accident.

Further, there is the fact that the lay of the land did not allow Plaintiff to see as far behind him as he normally would have been able to see had the accident happened on a totally flat stretch of highway. The collision took place between the vehicles just over a hill that could have obscured Plaintiff's view behind him. Officer Cook's speed, coupled with the fact that there was a hill that he had to cross over before colliding with Plaintiff, provides a reasonable basis for Plaintiff to fail to see Officer Cook attempting to pass him prior to making his left turn. Given these facts, it is reasonable for the jury to have found that Officer Cook's excessive speed was the sole cause of the accident. As such, Defendants' first contention is without merit.

Next, Defendants argue that Plaintiff failed to use his turn signal and a reasonable person could not find that a driver is free from fault if he fails to use his turn signal. There is a conflict in testimony as to whether Plaintiff fulfilled his duty under La.R.S. 32:104(B), which requires the driver of a left-turning vehicle to give

6

a signal of his intention to turn left not less than one hundred (100) feet before turning. Plaintiff testified that he engaged his left signal in preparation of making the left-hand turn into the driveway. Officer Cook testified that he saw no lights on the trailer and no left turn signal engaged on Plaintiff's vehicle prior to it beginning its turn across his path. Officer Steve Turner, a guest passenger in Officer Cook's car at the time of the accident, also testified that he did not recall seeing any turn signal or lights engaged prior to the left turn maneuver.

While there is more testimony that Plaintiff did not engage his turn signal than there is testimony that Plaintiff did engage his turn signal, this court's duty is not to count the number of testimonies, our duty is to ascertain whether it was reasonable for the jury to find what it found. A reasonable jury could find that Plaintiff was a more credible witness on the topic of whether he engaged his turn signal. As such, this contention by the Defendants has no merit.

Finally, Defendants argue that they should not be assessed 100% of the fault in the instant case because of the testimony of the investigating officer, Lt. Michael A. Cain. Lt. Cain testified that either driver had the opportunity to observe the other and stop his vehicle in time to avoid the collision. Defendant argues that if either party had the opportunity to avoid the accident, then the jury's finding of 100% of fault for one of the parties is unreasonable.

The Defendants base their argument on one statement made by the investigating officer. Lt. Cain also testified that Officer Cook was careless in the operation of his vehicle, was traveling in excess of the posted limit, and that had Officer Cook decided to slow down and stop, he would have been able to avoid the accident. A reasonable jury could have found that per the testimony of Lt. Michael

7

A. Cain, defendant driver, Officer Cook, had the "last clear chance" to avoid the accident. As such, this contention by the Defendants is also meritless.

The burden on Defendants, in attempting to disturb a fact finder's allocation of fault, is not to demonstrate that it would be reasonable to find some fault on the part of Plaintiff. Instead, they are burdened with proving that it was *unreasonable* for the fact finder to allocate 100% of the fault to the defendant driver, Officer Cook.

We find that there is ample evidence in the record for the trial court to find that Officer Cook was 100% at fault for the accident at issue. Accordingly, we affirm the jury's allocation of fault in this case.

**ASSIGNMENT OF ERROR #2:**

In their second assignment of error, Defendants contend that the jury erred in awarding damages to Plaintiff for a total hip replacement that was performed in June 2003. Defendants argue Plaintiff failed to meet the burden of proof required to establish a causal link between the accident and the subsequent injury by a preponderance of the evidence. We disagree.

It is well-settled that a plaintiff bears the burden of proving the causal connection between the injury sustained and the accident which caused said injury. *American Motorist Ins. Co. v. American Rent-All, Inc.*, 579 So.2d 429 (La.1991). The plaintiff must prove through medical testimony by a preponderance of the evidence that subsequent injuries were caused by the accident. *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603, 94-2615 (La. 2/20/95), 650 So.2d 757.

The Louisiana Supreme Court in *Housley v. Cerise*, 579 So.2d 973 (La.1991), created a presumption that aids a plaintiff in proving that there is a causal link

8

between an accident and subsequent injury. *Housley* establishes that three factors must be shown in order to apply the presumption: (1) The plaintiff must demonstrate that he was in good health prior to the accident at issue; (2) He must demonstrate that subsequent to the accident, symptoms of the alleged injury appeared and continuously manifested themselves afterwards; (3) He must demonstrate that through evidence, medical, circumstantial, or common knowledge, a reasonable possibility of causation between the accident and the injury claimed.

"The application of the *Housley* presumption is a factual issue as is the determination of causation, both of which are subject to the manifest error standard of review." *Detraz v. Lee*, 05-1263, p. 9 (La. 1/17/07), 950 So.2d 557, 563. Therefore, in order for this court to disturb the jury's finding that Plaintiff was entitled to recover damages for a total hip replacement, Defendants must show that, based on the evidence in the record, it was unreasonable for the jury to find that the accident caused the injuries to Plaintiff's hip.

We will first address whether it was unreasonable for the jury to find that Plaintiff was entitled to the *Housley* presumption. Defendants argue that the first factor in a *Housley* presumption is lacking because Plaintiff's hip was not in "good health" prior to the accident at issue. Defendants point to Plaintiff's medical records from the VA Medical Center that indicate complaints of severe hip pain dating back as many as ten years before the accident at issue.

While those records may indicate that Plaintiff's hip was not in perfect health, it does not mean that his hip was not in "good health" for purposes of *Housley*. Plaintiff's records indicate that over a period of ten years before the accident, there are only three documented reports of hip pain, one ten years before the accident, one

9

five years prior to the accident, and one three years prior to the accident. Three complaints of pain in the same area of the body, the latest of which is three years prior to the accident, does not necessitate a finding by the jury that Plaintiff was not in good health prior to the accident.

Moreover, Plaintiff testified that he was in relatively good health before the accident and could engage in normal, day-to-day activities without any difficulty. He also testified that he was not seeing a doctor for his hip, nor was he taking any medications for his hip. Further, Plaintiff testified that he had never had any discussions concerning hip replacement surgery. Plaintiff's testimony, coupled with absence of medical records that indicate that Plaintiff's hip was not in good health, provide a reasonable basis for the jury to have found that Plaintiff did meet the first factor necessary for the *Housley* presumption, that he was in good health prior to the accident.

Defendants next assert that Plaintiff was not entitled to the *Housley* presumption because neither of his treating physicians were able to state that there was more than a possibility that Plaintiff's pre-existing degenerative arthritic condition was aggravated by the accident, nor were they able to testify as to whether his hip replacement was causally related. This assertion lacks merit.

This court's reading of *Housley* is that there should be medical testimony that there is a "reasonable *possibility* of causal connection between the accident and the disabling condition." *Housley*, 579 So.2d at 980. (Emphasis added). Both Dr. Vanda Davidson, Plaintiff's treating orthopaedist, and Dr. William Bundrick, the orthopedic surgeon who performed Plaintiff's left hip replacement, testified that there is a reasonable possibility that the acceleration of the osteoarthritis in Plaintiff's hip was

10

caused by the trauma sustained in the accident.

Due to the testimonies above, we find that there is ample evidence to lead a reasonable person to conclude that Plaintiff demonstrated, through evidence that is medical, circumstantial, or common knowledge, that a reasonable possibility of causation between the accident and the injury claimed. As such, Plaintiff was entitled to the *Housley* presumption that the problems with Plaintiff's hip, and his subsequent hip replacement, are causally related to the accident in question.

Defendants next assert that even if Plaintiff is entitled to the *Housley* presumption, the jury erred in awarding damages to Plaintiff for a total hip replacement that was performed in June 2003. This assertion lacks merit.

Plaintiff's injury is assumed to be causally related to the accident due to the *Housley* presumption. The burden then shifted to Defendants to show that Plaintiff's injury was not causally related to the accident. Defendants, in claiming that the jury erred in finding that Plaintiff's injury was causally related, must demonstrate that the jury was unreasonable in not finding that the Defendants carried their necessary burden of proof. We find that Defendants have not done so.

Defendants attempt to bolster their position by pointing to the testimonies of Dr. Davidson and Dr. Bundrick. Even though Dr. Davidson replied, "Not a whole lot" when asked whether Plaintiff's left hip problems were related to the accident as issue, Dr. Davidson went on to testify that he would be more inclined to make an association between the accident and Plaintiff's hip problems if Plaintiff experienced a period of continuous discomfort after the accident. Plaintiff did, in fact, testify to such continuous discomfort after the accident. Plaintiff testified at trial that he had injured his hip in the accident, and to a varying degree, it caused him continual pain

11

thereafter.

Dr. William Bundrick, the orthopedic surgeon who performed Plaintiff's left hip replacement, testified, "there's a possibility that it, you know, aggravated the problem. And it's hard to say whether it accelerated the fact that he ---- when he would have a total hip." He went on to testify that although an accident does not cause the osteoarthritis, it can accelerate the symptoms of osteoarthritis, as well as the disease process.

While the physician's testimonies above do not answer the question of whether Plaintiff's hip injury was more probably than not related to the accident, they do not make it unreasonable for the jury to find that the injury was related to the accident. The testimonies above suggest to a trier of fact that it was just as probable as not that the accident caused the injury to Plaintiff's hip. Given that it was Defendants that needed to move the jury from dead center due to the *Housley* presumption, the result the jury reached is reasonable. Accordingly, we affirm the award of damages to Plaintiff for the hip replacement made by the jury.

**ASSIGNMENT OF ERROR #3:**

Defendants contend that the jury committed manifest error in awarding Plaintiff damages for future medical expenses in the amount of $5,000.00. We agree.

An award of future medical expenses must be supported by medical testimony indicating both the need and the probable cost. *McDaniel v. Carencro Lion's Club*, 05-1013 (La.App. 3 Cir. 7/12/06), 934 So.2d 945.

There is no testimony of any kind from either of Plaintiff's treating physicians that Plaintiff would need future medical treatment related to the accident, nor did

12

either physician testify as to how much such medical treatment would cost. Dr. Davidson is the only physician who testified regarding any future medical treatment when he testified that it was a "possibility" that Plaintiff would require surgery in the future for the arthritic condition in his right wrist.

Based on the record, we find that the fact finder erred in awarding Plaintiff $5,000.00 in future medical expenses, as there was not adequate evidence in the record to warrant such an award. Accordingly, we reverse the award of damages in the amount of $5,000.00 to Plaintiff.

**Answer to the Appeal:**

In his answer to Defendants' appeal, Plaintiff asserts that the amount of damages awarded to him by the jury was inadequate and requests an additional award of $100,000.00.

Ordinarily, a quantum award is reviewed on appeal by the "much discretion" standard. *Reck v. Stevens*, 373 So.2d 498 (La.1979). If an abuse of discretion is found, the appellate court will only lower the award to the highest (or raise the award to the lowest) point which is reasonably within the discretion afforded the court; the appellate court does not substitute its judgment for that of the trial court judge or jury in this situation. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976).

After reviewing the record in its entirety, we do not find the amount of damages awarded to Plaintiff to be inadequate. Accordingly, we affirm the jury's award of $222,192.00 to Plaintiff.

**CONCLUSION**

After our review of the record, we find that the jury was reasonable in

allocating 100% of the fault to Defendants. We further find that the jury did not err in awarding Plaintiff damages for a total hip replacement. However, we reverse the jury's award of damages in the amount of $5,000.00 for future medical expenses, as the record does not contain ample evidence to warrant such an award. Additionally, we deny Plaintiff's request for an increase in his damage award, as we find the damages awarded by the trier of fact to be adequate. All costs of this appeal are to be divided evenly between the parties.

**AFFIRMED IN PART, REVERSED IN PART.**