STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


08-436


MICHAEL E. PREJEAN

VERSUS

CHRISTOPHER D. RABALAIS, ET AL.


**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 06-1040-L
HONORABLE MARILYN CASTLE, PRESIDING
**********


SYLVIA R. COOKS
JUDGE

**********

Court composed of Sylvia R. Cooks, Michael G. Sullivan and Billy Howard Ezell, Judges.

**AFFIRMED IN PART;  REVERSED IN PART;  AND RENDERED.**


Rusty Galloway
Michael L. Barras
Galloway Jefcoat, L.L.P.
1925 Dulles Drive
P.O. Box 61550
Lafayette, LA 70596-1550
(337) 984-8020
COUNSEL FOR PLAINTIFF/APPELLANT:
    Michael E. Prejean

Timothy A. Maragos
John E. Ortego & Associates
P.O. Box 81428
Lafayette, LA 70598-1428
(337) 988-7240
COUNSEL FOR DEFENDANTS/APPELLEES:
    Monica Steinman and State Farm

**COOKS, Judge.**

On February 6, 2006, at approximately 6:00 a.m., Michael Prejean was riding in a Ford F-150 pick-up truck driven by Christopher Rabalais. According to Prejean, Rabalais was giving him a ride to work. While driving on E. Broussard Road in Lafayette, Rabalais rear-ended another vehicle. Rather than stopping his vehicle at the scene of the accident, Rabalais put his vehicle in reverse, backed up and drove around the car he struck. Prejean testified his repeated pleas to stop were ignored by Rabalais.

Shortly after fleeing the scene of the first accident, Rabalais approached the intersection of Duhon Road and Lagneaux Road. Stopped at that intersection was Monica Steinman in her Toyota Corolla, who was waiting to turn left onto Lagneaux Road from Duhon Road. Duhon Road is a two-lane highway, with a no-passing zone at the area in question. Stopped behind Ms. Steinman was a Dodge one ton four-wheel drive truck being driven by Matthew Hebert. According to Hebert, Ms. Steinman had her left-turn blinker activated. He also stated he had his blinker activated as well.

As Ms. Steinman waited to turn left, Rabalais approached from behind. As he approached the stopped Steinman and Hebert vehicles, rather than slowing his vehicle, Rabalais began a passing maneuver. Hebert testified Rabalais was traveling at an excessive rate of speed, "flying–sixty-five, seventy" as he attempted to pass. At that moment, Ms. Steinman began to turn left. She stated, before turning she looked in her rear-view mirror, *but did not look in her side-view mirror*. The vehicles collided, forcing Ms. Steinman's car back into its lane, and sending Rabalais' truck skidding into a deep, drainage ditch. Rabalais' truck eventually came to a rest after striking a culvert. Michael Prejean suffered injuries as a result of the collision,

including broken bones in his left leg and ankle which required surgery.

Rabalais attempted to give the impression at the scene that Prejean was the driver of the vehicle. The officer later determined that Rabalais did not have a valid driver's license on the date of the accident.

As a result of his injuries, Prejean filed suit against Rabalais and his insurer, Progressive Insurance Company, as well as Ms. Steinman and her insurer, State Farm Mutual Automobile Insurance Company. Prejean alleged negligence on the part of both Rabalais and Ms. Steinman.

Prior to trial, Prejean settled with Rabalais and his insurer. The remaining parties stipulated that the matter would be heard as a bench trial because the amount in controversy was not in excess of $50,000. The parties also stipulated that Prejean was seeking "no more than the policy limits of coverage afforded to the defendant, Monica Steinman, and her liability insurer, State Farm Mutual Automobile Insurance Company, of $25,000."

After a one-day bench trial, the court ruled that Rabalais was entirely at fault in causing the accident because he violated La.R.S. 32:76 in making a passing maneuver in a no passing zone. This appeal followed and Mr. Prejean now asserts the trial court erred in finding Ms. Steinman free from fault in causing the accident.

**ANALYSIS**

In *Layssard v. State, Dep't of Public Safety and Corrections*, 07-78, p. 3 (La.App. 3 Cir. 8/8/07), 963 So.2d 1053, 1057, *writ denied*, 07-1821 (La. 11/9/07), 967 So.2d 511, this court set forth the standard of review for a trier of fact's apportionment of fault:

> The Louisiana Supreme Court, in *Duncan v. Kansas City Southern Railway Co.*, 00-66, pp. 10-11 (La.10/30/00), 773 So.2d 670, 680-81, set forth the standard for reviewing comparative fault determinations as follows:

This Court has previously addressed the allocation of fault and the standard of review to be applied by appellate courts reviewing such determinations. Finding the same considerations applicable to the fault allocation process as are applied in quantum assessments, we concluded "the trier of fact is owed some deference in allocating fault" since the finding of percentages of fault is also a factual determination. *Clement v. Frey*, 95-1119 (La.1/16/96), 666 So.2d 607, 609, 610. As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. *Id.*

Therefore, a trier of fact's allocation of fault is subject to the manifestly erroneous or clearly wrong standard of review. A trial judge's findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1111 (La.1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1112.

Mr. Prejean first argues the trial court erred in not considering Ms. Steinman's admission of fault made in open court. He points to the following testimony from Ms. Steinman:

Q.   . . . You have side view mirrors, don't you?

A.   Yes, I do.

Q.   They work, right?

A.   Yes, they do.

Q.   You would never intentionally turn in front of another vehicle, would you?

A.   Absolutely not.

Q.   In fact, the only reason you would turn is if you didn't see them.

A.   Exactly.

Q.   And you said that you looked in your rear view mirror, correct?

A.   Correct.

Q.    You never looked in your side view mirrors, did you?

A.    That is also correct.

Q.    So you don't know whether he was passing or not?

A.    (Shook head "No").

Q.    You have no idea?

A.    (Shook head "No").

Mr. Prejean contends this exchange amounts to a judicial confession of fault based on Ms. Steinman's failure to use her side-view mirrors. He notes that La.R.S. 32:104 sets forth a strong duty of care for a left-turning motorist. That statute provides in pertinent part:

> No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, *or otherwise turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety.*

The trial court specifically noted the high burden of care placed on a left-turning motorist, but felt that Mr. Rablais' extraordinarily reckless driving absolved Ms. Steinman of any fault due to her failure to use her side view mirrors. We do not agree. Although Mr. Rabalais was clearly more culpable in causing this accident, we cannot say that Ms. Steinman's failure to use her side-view mirrors played no role in the accident.

In *Layssard*, 963 So.2d 1053, this court affirmed a finding of 100% fault to a passing motorist who collided with a left-turning vehicle. However, in that case it was specifically testified to by the left-turning motorist that he checked his mirrors twice before beginning his turn. In this case, Ms. Steinman was refreshingly candid that she only looked in her rear-view mirror and not her side-view mirrors before beginning her turn. Considering Mr. Hebert was situated immediately behind her in

his large pick-up truck, it is questionable how much Ms. Steinman could have seen through her rear-view mirror. However, we find it reasonable to conclude that the accident might have been avoided had Ms. Steinman used her side-view mirrors. Therefore, the trial court erred in failing to apportion some percentage of fault to Ms. Steinman.

Having found the trial court was clearly wrong in not assessing some fault to Ms. Steinman, we re-allocate fault as instructed by the supreme court in *Toston v. Pardon*, 03-1747 (La.4/23/04), 874 So.2d 791, 803:

> After an appellate court finds a clearly wrong apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion. In applying the manifest error standard of review to the factfinder's allocation of fault in *Watson v. State Farm Fire & Casualty Ins. Co.*, 469 So.2d 967, 974 (La.1985), this court stated as follows:
>
> > In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
> >
> > In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. (Citation omitted.)

The parties agree that Mr. Rabalais' actions were the main contributor in the cause of the subject accident. As the trial court noted, La.R.S. 32:76 prohibits any passing when a vehicle is within 100 feet of an intersection. It provides:

A. No vehicle shall at any time be driven to the left side of the highway

under the following conditions:

....

(2) when approaching within one hundred feet of or traversing any intersection or railroad grade crossing;

Combining this clear statutory violation with the facts that Mr. Rabalais was speeding; fleeing from a previous accident; oblivious to or unconcerned with the turning signals emanating from both the Steinman and Hebert vehicles, and we find his negligence far exceeded that of Ms. Steinman. Reviewing the record as a whole, we find the lowest amount of fault that a reasonable fact finder could have assessed Ms. Steinman was ten (10) percent. Accordingly, we amend the trial court's judgment and assess the following percentages of fault: ninety (90) percent to Mr. Rabalais and ten (10) percent to Ms. Steinman.

## DAMAGES

Where a fact finder does not reach an issue because of an earlier finding which disposes of the case, the court of appeal, in reversing the earlier finding, must make a *de novo* determination of the undecided issues from the facts in the record. *LeBlanc v. Stevenson*, 00-157 (La.10/17/00), 770 So.2d 766. The reviewing court must make an award that is just and fair for the damages revealed by the record, where the trial court, as here, has made no award for damages. *Id*. Here the trial court did not reach the issue of damages because it found Ms. Steinman was not at fault in causing the accident.

As noted, Mr. Prejean stipulated that his total damages were not in excess of $50,000.00, and that State Farm would not be liable for more than their $25,000.00 policy limits.

The record established that Mr. Prejean suffered serious injuries from the accident. He has already undergone one surgery and will require a second. He also

stated that he had limitations in the movement and function of his ankle because of the pins that were placed in the ankle during the surgery, as well as significant pain and suffering. His medicals exceed $10,000.00 to date, which does not include the second surgery. Mr. Prejean testified he missed approximately six months of work due to his ankle injuries, which cost him in excess of $9,000.00 in earnings. Clearly, he will miss more work due to the second surgery and suffer more lost earnings. Therefore, combining these amounts with a reasonable general damage award, we find a total award of at least $50,000.00 is appropriate in this matter.

## DECREE

For the foregoing reasons, judgment of the trial court is reversed in part and rendered to assign ten (10) percent of the fault to Monica Steinman. The fault of Christopher Rabalais is thus reduced to ninety (90) percent. We also award $50,000.00 in damages to Michael Prejean, subject to a reduction of ninety (90) percent for the comparative negligence of Mr. Rabalais, who Mr. Prejean previously settled with. Costs of this appeal are assessed to appellees, Monica Steinman and State Farm Mutual Automobile Insurance Company.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**