STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1390


TONY LAVALAIS, ET AL.

VERSUS

MELISSA E. BRISTER, ET AL.


**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2007-0159-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.**


Kevin Wade Trahan
Ottinger Hebert, L.L.C.
P. O. Drawer 52606
Lafayette, LA 70505-2606
(337) 232-2606
Counsel for Defendant-Appellant:
Acadian Ambulance Service, Inc.

Cory Paul Roy
Attorney at Law
P. O. Box 544
Marksville, LA 71351
(318) 240-7800
Counsel for Plaintiffs-Appellees:
Tony Lavalais
Rashaun Lacart

**PICKETT, Judge.**

Acadian Ambulance appeals a judgment of the trial court apportioning fault in a car accident.

**STATEMENT OF THE CASE**

At approximately 4 a.m. on the morning of July 4, 2006, Danielle Dominick, Tony Lavalais, and Rashaun Lacart decided to go "clubbing" at A & W Lounge north of Marksville. Dominick drove and Lavalais and Lacart were passengers in her vehicle. A & W Lounge is on Highway 1, on the east side of the road, just north of Stockyard Lane. Dominick turned right from Stockyard Lane onto Highway 1. Unable to find a parking spot at A & W Lounge, Dominick attempted to make a left turn into the parking lot at Don's Feed Mill. While the Dominick vehicle was in the southbound lane of Highway 1, an Acadian Ambulance vehicle driven by EMT Melissa Brister struck the Dominick vehicle. The Acadian Ambulance vehicle was traveling northbound and was passing the Dominick vehicle. In this section of the Highway 1, passing is allowed.

The guest passengers in the Dominick vehicle, Lavalais and Lacart (hereinafter "the plaintiffs") filed this suit against Acadian Ambulance and Melissa Brister. While the basic facts are not in dispute, the particular circumstances of the accident were contested at trial. The plaintiffs' account of the accident is that when they stopped at the stop sign at Stockyard Lane and Highway 1, there was no traffic approaching from the south. Dominick turned right, and when they discovered that the parking lot of the bar was full, Dominick turned on her left blinker and started to turn into the parking lot at Don's Feed Mill when the ambulance struck the driver's side door. In

1

the defendant's version of the accident, as told by Brister and Monica Caldero, an EMT who was in the passenger's seat at the time of the accident, the ambulance was traveling between fifty-five and sixty miles per hour in the northbound lane. The Dominick vehicle made a rolling stop at the end of Stockyard lane and then pulled out two to four car lengths ahead of the ambulance. Brister, who had set the cruise control, applied the brakes, turned her left blinker on with the intention of passing the car, and moved over into the southbound lane. Caldero testified that when the front of the ambulance was even with the rear tires of the Dominick vehicle, Dominick began to veer into the southbound lane. The trial court specifically found that Lacart and Lavalais were credible witnesses. The trial court also noted that "Caldero's testimony was somewhat defiant and extremely self-serving." The trial court found Brister's testimony less precise than Caldero's.

After hearing the testimony and reviewing the police report and photographs of the vehicles, the trial court made the following factual findings:

> The Dominick vehicle appeared at the stop sign at the intersection of Stockyard Lane and Louisiana Highway #1 and made a quick right turn onto Highway #1, pulling in front of the Acadian Ambulance. The ambulance came upon the Dominick vehicle quickly due to the Dominick vehicle traveling at an extremely slow rate of speed while planning to park at the A & W Lounge and due to the speed of the ambulance. Due to lack of a parking place, Dominick made a decision to park in the Don's Feed Mill Parking Lot and began a lefthand turn while the ambulance was beginning a passing maneuver. Dominick did not take the proper precautions prior to making the lefthand turn. Brister made a decision to pass without ascertaining the intent of the Dominick vehicle. This Court is not convinced that brakes were applied by Brister until immediately prior to the impact.

2

The trial court went on to find that Dominick and Brister were each fifty percent at fault in causing the accident and awarded damages to Lavalais and Lacart. Acadian Ambulance now appeals that judgment.

## ASSIGNMENT OF ERROR

Acadian Ambulance asserts one assignment of error:

> The District Court was manifestly erroneous in concluding that Brister was fifty percent at fault in causing the collision when the evidence established that she was in the process of lawfully overtaking the plaintiffs' vehicle when it suddenly executed a left turn and entered into her lane of travel.

## DISCUSSION

"[A] trier of fact's allocation of fault is subject to the manifestly erroneous or clearly wrong standard of review." *Williams v. Aymond*, 05-1547, 05-1548, p. 8 (La.App. 3 Cir. 12/6/06), 945 So.2d 823, 831, *writs denied*, 07-5 (La. 3/9/07), 949 So.2d 442 and 07-69 (La. 3/9/07), 949 So.2d 449. "[A]llocation of fault is the finding of an acceptable range and any allocation by the trier of fact within that range cannot be disturbed under the manifest error standard of review." *Id.* at 831; *see also Clement v. Frey,* 95-1119, 95-1163 (La. 1/16/96), 666 So.2d 607. Our supreme court discussed the factors an appellate court must consider when reviewing a trial court's allocation of fault in *Watson v. State Farm Fire and Cas. Ins. Co.*, 469 So.2d 967, 974 (La.1985):

> [V]arious factors may influence the degree of fault assigned, including: (1)whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent

3

conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

The duties imposed on a motorist turning left are discussed in La.R.S. 32:104, in pertinent part:

A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.

B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

C. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.

The duties of a motorist passing another vehicle moving in the same direction is codified at La.R.S. 32:73:

The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:

(1) Except when overtaking and passing on the right is permitted, the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance, and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.

(2) Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.

4

The trial court determined that Dominick and Brister were each fifty percent at fault. The trial court found that Dominick did not determine that a lefthand turn could be safely made before turning left and was distracted and did not see the ambulance at any point prior to impact. The trial court found that Brister did not overtake the Dominick vehicle at a safe distance and that Brister did not take the necessary precautions when she determined that Dominick was proceeding slowly, especially since there were many cars in the parking lot and on the shoulder of the road.

The trial court's factual findings are supported by the record. The trial court clearly believed the testimony of Lavalais and Lacart that Dominick had her blinker on before turning left. Reviewing the damage to the vehicles, the trial court determined that the passenger's side headlight area of the ambulance collided with the driver's door of the Dominick vehicle. The court found that the angle of impact supported the version of events of Lavalais and Lacart that Dominick was turning left and discounted Caldero's testimony that the Dominick vehicle was drifting to the left as though it was going to parallel park on the shoulder of the southbound lane. In making these findings, the trial court made credibility determinations. "[W]here the findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of fact." *Adams v. Rhodia, Inc.*, 07-2110, p. 10 (La. 5/21/08), 983 So.2d 798, 806-07.

We must next determine whether the factual findings of the trial court about how the accident happened support the allocation of fault between the parties. Acadian Ambulance argues that in a similar case, *Yellott v. Underwriters Insurance Co.*, 04-1342 (La.App. 3 Cir. 8/31/05), 915 So.2d 917, *writ denied*, 05-2439 (La.

5

4/24/06), 926 So.2d 540, this court reversed a fifty-fifty allocation of fault and found the passing vehicle ten percent at fault and the vehicle turning left ninety percent at fault. In *Yellott*, this court determined that a driver who turns left has a duty to make certain that the left turn can be made safely, and that duty includes insuring that any vehicle passing on the left are safely clear of the vehicle. This court relied on an earlier case, *Kilpatrick v. Alliance Casualty and Reinsurance Co.*, 95-17 (La.App. 3 Cir. 7/5/95), 663 So.2d 62, *writ denied*, 95-2018 (La. 11/17/95), 664 So.2d 406, in reaching this conclusion.

In *Kilpatrick*, this court found that a trial court was manifestly erroneous in finding that a passing motorist, Kilpatrick, was seventy percent at fault and the left turning motorist, McManus, was thirty percent at fault. In reallocating fault one hundred percent to McManus, this court stated:

> Louisiana jurisprudence holds that the left-turning motorist and the overtaking and passing motorist must exercise a high degree of care because they are engaged in dangerous maneuvers. *Neal v. Highlands Ins. Co.*, 610 So.2d 177 (La.App. 3 Cir.1992), *writ denied*, 612 So.2d 100 (La.1993).
>
> The law sets forth the duties imposed on a left-turning driver as well as a passing driver. The duties imposed upon a left-turning motorist are found in La.R.S. 32:104. Under this statute, McManus was required to give a signal of his intent to make a left turn at least 100 feet before reaching Duncan Road. In addition to giving the proper signal, McManus was required to make a proper observation that the turn could be made without endangering a passing vehicle. *Bamburg v. Nelson*, 313 So.2d 872 (La.App. 2 Cir.), *writ denied*, 318 So.2d 57 (La.1975). The onerous burden placed upon a left-turning motorist is not discharged by the mere signaling of an intention to turn. The giving of a signal, which fact is disputed in the case *sub judice*, is immaterial if at the time the driver of the turning vehicle did not have the opportunity to make the turn in safety. *Husser v. Bogalusa Coca Cola Bottling Co.*, 215 So.2d 921 (La.App. 1 Cir.1968).

6

Finally, in a vehicular collision case, the plaintiff may take advantage of a presumption of the defendant's negligence when the plaintiff proves the defendant executed a left-hand turn and crossed the center line at the time of impact. *Thomas v. Champion Ins. Co.*, 603 So.2d 765 (La.App. 3 Cir.1992). Accordingly, the burden rests heavily on the motorist who desires to make a left turn to explain how the accident occurred and show he is free of negligence. *Miller v. Leonard*, 588 So.2d 79 (La.1991).

The law equally imposes a duty upon the passing motorist. This duty is specifically set forth in La.R.S. 32:73 and 32:75. Based on these statutes, the jurisprudence holds that the driver of a following or overtaking vehicle must be alert to the actions of motorists preceding him on the highway. *Burns v. Evans Cooperage Co.*, 208 La. 406, 23 So.2d 165 (1945). More particularly, the driver of an overtaking or passing vehicle has the duty to ascertain before attempting to pass a preceding vehicle that from all the circumstances of traffic, lay of the land, and conditions of the roadway, the passing can be completed with safety. *Palmieri v. Frierson*, 288 So.2d 620 (La.1974).

From the outset, we note that the trial court was presented with disputed testimony about whether McManus had signaled his left turn and whether he attempted to make the left turn at 45 m.p.h. or a lesser speed. After reviewing the testimony, the trial court determined both that McManus had signaled his turn and that he was not travelling at 45 m.p.h. when he attempted his turn. We find no manifest error in these determinations. Nevertheless, for reasons that follow, we find that neither of these findings militate against our determination that the trial court was manifestly erroneous in finding Kilpatrick at fault, to any degree, in causing this accident.

As pointed out in the jurisprudence cited above, if the driver of a left-turning vehicle signals a left-hand turn, the left-turning driver only fulfills one-half of the requirement for making such a maneuver. *Husser*, 215 So.2d at 925. In the case *sub judice*, the record is uncontradicted that McManus observed Kilpatrick's pickup truck approaching behind him in the right-hand lane of travel and that he never again looked in his rearview mirror to ascertain where the pickup truck was before he began his left-hand turn. It is likewise undisputed that Kilpatrick's pickup truck had cleared the trailer portion of McManus's eighteen-wheeler when McManus began his turn to the left and that it was the left rear wheels of the tractor portion of the eighteen-wheeler that struck Kilpatrick's pickup truck. Accordingly, when the accident occurred, Kilpatrick had almost completed his passing maneuver. It is clear from the record that had McManus looked

backward immediately prior to turning, he would have seen that he could not make the turn safely.

Likewise, even if we assume that McManus was not attempting to make the left-hand turn at 45 m.p.h., that fact does not disway us from finding that the trial court was manifestly erroneous in casting Kilpatrick with any degree of fault. It is unreasonable to require the following driver to anticipate that the preceding driver will make a left turn based on the mere fact that the preceding vehicle was traveling slowly. *Barber v. Sumrall*, 206 So.2d 560 (La.App. 1 Cir.1968).

*Kilpatrick*, 663 So.2d at 66-67.

Recently, this court has even imposed ten percent fault on a motorist who was stopped, with her blinker on waiting to turn left, when a truck fleeing a hit and run accident passed her at an excessive rate of speed in a no passing zone. The court reasoned that the driver did not look in her side view mirror before turning left, and if she had she could have avoided the accident. This even though she did look in her rearview mirror but saw only the car behind her which was also waiting to turn left. *Prejean v. Rabalais*, 08-436 (La.App. 3 Cir. 12/10/08), 998 So.2d 1225.

Based on this jurisprudence, we find that the trial court committed manifest error in its allocation of fault. Clearly, the law imposes a higher duty on Dominick, the left-turning motorist, than on Brister, the passing motorist, in the case before us. We reach this conclusion even though we accept the facts as set forth by the trial court. "After the court of appeal finds a 'clearly wrong' apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion." *Clement*, 666 So.2d at 611. We find that the highest percentage of fault that the trial court could have imposed on Brister and Acadian Ambulance is twenty percent. Therefore, we amend the judgment of the trial court and allocate eighty of the fault

8

to Dominick and twenty percent of the fault to Brister for the damages suffered by Lavalais and Lacart.

## CONCLUSION

The judgment of the trial court apportioning fault equally between Melissa Brister and Danielle Dominick is reversed, and fault for the accident herein is apportioned eighty percent to Danielle Dominick and twenty percent to Melissa Brister. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiffs-appellees, Tony Lavalais and Rashaun Lacart.

**REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.**